

**FILED**
**Jun 11, 2019**
**02:25 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD
## (HEARD MAY 31, 2019, AT KNOXVILLE)

| | |
|---|---|
| Jason Rhodes | ) Docket No. 2018-01-0349 |
| | ) |
| v. | ) State File No. 33747-2018 |
| | ) |
| Amazon.com, LLC, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Thomas L. Wyatt, Judge | ) |

---

### Affirmed in Part, Reversed in Part, and Remanded

---

The employee, a picker at the employer's warehouse facility, injured his foot when a box fell on it while at work. He was provided a panel of physicians and was later referred to a specialist by the physician he chose from the panel. The employee did not attend his appointment with the specialist because he felt the location was too far from his home. Instead, he obtained unauthorized treatment from a different specialist and filed a petition seeking medical benefits in the form of a panel of specialists or authorization to treat with his own specialist. He also sought temporary disability benefits. The trial court, while finding the specialist to whom the employee had been referred was in his community for purposes of Tennessee Code Annotated section 50-6-204(a)(3)(A)(i), ordered the employer to provide a panel of specialists after determining the employer had violated the spirit of Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii) by directing the treating physician to refer the employee to a specific specialist. The trial court also awarded temporary disability benefits. The employer has appealed. Having carefully reviewed the record, we affirm in part, reverse in part, and remand the case.

Presiding Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board in which Judge Timothy W. Conner joined. Judge David F. Hensley concurred in part and dissented in part.

W. Troy Hart and Tiffany B. Sherrill, Knoxville, Tennessee, for the employer-appellant, Amazon.com, LLC

Tim O. Henshaw, Chattanooga, Tennessee, for the employee-appellee, Jason Rhodes

**Factual and Procedural Background**

Jason Rhodes ("Employee") worked as a picker for Amazon.com, LLC ("Employer"), at its Chattanooga location. Employee injured his left foot on April 17, 2018, when a box fell and struck his foot. He was treated at Employer's onsite clinic and was provided a panel of physicians from which he chose AFC Urgent Care.

The next day, April 18, 2018, at Employee's first appointment with AFC Urgent Care, Dr. Natasha Ballard performed an exam and ordered x-rays of Employee's foot, which did not reveal a fracture or any swelling. Dr. Ballard diagnosed Employee with a contusion and released him to work with restrictions. She also instructed him to wear an open-toed boot. According to Employee, he went back to work later that day and was told he could not work with the boot. Employee testified that he returned to work for his next scheduled shift on April 22, 2018, and was informed he had been terminated.

Employee saw Dr. Ballard again four days after his injury and informed her that he could not put pressure on his foot. Dr. Ballard ordered additional x-rays, which did not reveal the cause of his complaints, and she prescribed an anti-inflammatory and increased Employee's restrictions. At a subsequent appointment, Employee complained of continuing problems, and Dr. Ballard ordered testing to rule out neuropathy, which came back within normal limits. Unable to identify the cause of Employee's persistent pain, Dr. Ballard extended the duration of his restrictions and referred him to Dr. Ricky Hutcheson, an orthopedic surgeon in Cleveland, Tennessee, for further evaluation. When asked why she referred Employee to Dr. Hutcheson, Dr. Ballard stated:

> Dr. Hutcheson had just been, since we got the Amazon account, the kind of preferred physician for Amazon, just we were told that, you know, for orthopedic we prefer Dr. Hutcheson. Historically, it has been to – a lot of companies do this to get them in to see someone faster as opposed to a general panel. It just depends on the employer. Even though we are in a panel state, it depends on the employer and particularly their preference. Some employers or case managers prefer certain physicians over others. Typically we do that just to help speed up the process, so they can get in to see someone sooner.

When asked if anyone told her that she had to make referrals of Amazon employees to Dr. Hutcheson, Dr. Ballard stated "[t]hat was told to us . . . when we first started the account. . . . When we first got that, he had given us something that they wanted referrals to Dr. Hutcheson. So we've just kept that going ever since." When asked if there was any medical reason why she made a specific referral to Dr. Hutcheson, Dr. Ballard responded:

2

Medically, no. No. It was just – Amazon would just prefer to send to Dr. Hutcheson. In my mind I'm doing it because it's typically faster, again, to get them – if we've got a specific doctor, typically that's been our experience, that you can get in faster, as opposed to presented with a general panel and then they have time to decide between physicians who to go see. As far as I know, it's been to help facilitate a speedier follow-up for patients.

Employer scheduled an appointment for Employee with Dr. Hutcheson, which he did not attend because he felt it was too far to drive. Dr. Hutcheson's office was approximately twenty-five miles from Employee's home.

Employee ultimately sought medical treatment with his own orthopedic physician, Dr. Jesse Doty, who diagnosed him with a foot strain. Dr. Doty recommended Employee continue wearing his boot and that he be released with no restrictions after completing four weeks of restricted duty. Employee remained out of work from April 22, 2018, until June 2, 2018, when he began working as a security guard for a different employer some six weeks after his injury.

When asked whether Employee's injury was work-related, Dr. Doty stated that, assuming Employee's history was credible, his injury "could have been caused by the work-related accident that he described." When asked how Employer's preference for a certain doctor might affect the physician/patient relationship, Dr. Doty stated:

I think these relationships occur all the time where employers have a relationship with a physician and generally the injured employee starts out with that physician for their overall history, physical and evaluation. But I don't think that has anything to do with whether it's in the patient's best interest. I think those are formidable relationships which are standard with a lot of companies.

When asked why he made referrals to specific doctors, Dr. Doty responded that he sometimes "refer[s] based on feedback from case managers . . . because [he] know[s] there are certain physicians that they work with and have relationships with." He further explained, "[i]f the patient doesn't have a preference, then I'll ask the case manager do you have a preference for the referring physician." Dr. Doty confirmed that receiving a recommendation for the physician referral makes it easier to recommend a physician who accepts workers' compensation patients.

*Procedural History*

Employee filed a petition seeking medical and temporary disability benefits. At an expedited hearing, Employee clarified that he was seeking medical treatment in the

form of either a panel of orthopedic physicians or authorization to treat with Dr. Doty, as well as temporary disability benefits from April 22, 2018, through June 1, 2018. Employee asserted Dr. Hutcheson was outside his community, and thus he should not be required to see him. Employee also argued that by directing Dr. Ballard to refer its workers to Dr. Hutcheson, Employer had usurped his right to select his treating physician.

In response, Employer maintained that it had complied with the law by providing an initial panel of physicians and then by accepting Dr. Ballard's referral to Dr. Hutcheson. Employer also asserted it had no obligation to provide additional medical treatment after Employee refused medical treatment with Dr. Hutcheson. Finally, Employer argued it did not owe temporary disability benefits because Employee refused to treat with Dr. Hutcheson and because he had been terminated for cause.

The trial court found that Employee would likely prevail at trial in proving his entitlement to see an orthopedist other than Dr. Hutcheson and in proving his entitlement to temporary disability benefits from April 22, 2018, through June 1, 2018. Specifically, the court found that insisting Employee see a physician located twenty-five miles from his home was not sufficiently inconvenient to exclude Dr. Hutcheson as an appropriate physician under the community standard in Tennessee Code Annotated section 50-6-204(a)(3)(A)(i). However, the court found that by directing Dr. Ballard to refer employees to Dr. Hutcheson, Employer "remove[d] the treating physician's neutrality by compelling referral to a specific specialist." In so doing, the court determined Employer failed to comply with the spirit of the referral statute, Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii). Consequently, the court ordered Employer to provide a panel of orthopedists. Finally, the court found that Employee was entitled to temporary disability benefits for approximately six weeks, from his termination on April 22, 2018, to his last day of unemployment on June 1, 2018. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2018). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are

4

also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2018).

## Analysis

Employer raises three issues on appeal: (1) whether Employee is entitled to a panel of specialists; (2) whether Employee is entitled to medical and temporary disability benefits after refusing to comply with the medical treatment offered by Employer; and (3) whether Employee is entitled to temporary disability benefits following his termination. For his part, Employee assigns error to the trial court's determination that Dr. Hutcheson was not located sufficiently far away from his residence as to conflict with the community standard in Tennessee Code Annotated section 50-6-204(a)(3)(A)(i). He also asserts that this appeal is frivolous and, therefore, he should be awarded attorney's fees. We address each issue in turn.

### *The Community Standard*

We begin with Employee's argument that Dr. Hutcheson's office, located twenty-five miles from Employee's home, was outside his community. The trial court was not persuaded, and neither are we.

An employer must "designate a group of three (3) or more independent reputable physicians . . . if available *in the injured employee's community* . . . from which the injured employee shall select one (1) to be the treating physician." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (emphasis added). Additionally, "when necessary, the treating physician selected in accordance with this subdivision (a)(3)(A) shall make referrals to a specialist physician." *Id.* When such a referral is made, "[t]he employer shall be deemed to have accepted the referral, unless the employer, within three (3) business days, provides the employee a panel of three (3) or more independent reputable physicians . . . ." Tenn. Code Ann. § 50-6-204(a)(3)(A)(ii).

Interestingly, the community requirement in section 50-6-204(a)(3)(A)(i) does not appear in the referral provision of section 50-6-204(a)(3)(A)(ii). To the extent the community requirement applies to referrals at all, the trial court correctly pointed out that the parties have not provided, nor have the courts identified, a definition of "the injured employee's community" as that phrase is used in section 50-6-204(a)(3)(A)(i). Although the workers' compensation scheme references "community" in other statutory provisions relating to medical benefits, the statutes do not include a definition of "in the injured

employee's community" for purposes of section 50-6-204(a)(3)(A)(i).[1]  Thus, we agree with the trial court that such disputes should be decided in light of the totality of the circumstances of each particular case.

Here, the trial court ruled that, while Dr. Hutcheson's location twenty-five miles from Employee's home may have been inconvenient to Employee, the inconvenience was not sufficient to place Dr. Hutcheson outside Employee's community for the purpose of serving as his authorized physician.  The evidence does not preponderate against this conclusion.  Accordingly, we affirm the trial court's finding that Dr. Hutcheson was located within Employee's community.

*Direct Referral*[2]

A.

Employer argues Employee is not entitled to a panel of specialists because Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii) provides for direct referrals and it complied with the statute when it accepted Dr. Ballard's referral and scheduled an appointment with Dr. Hutcheson instead of providing a panel.  Employee responds that injured workers always have the right to select a treating physician from a panel, even when there is a direct referral accepted by an employer in accordance with section (a)(3)(A)(ii).

Whether an employee may always insist on a panel of physicians in the context of a direct referral, and thereby trump an employer's statutory right to elect whether to accept the referral or provide a panel, is an issue of first impression.  There are several statutory provisions pertinent to this important issue.  First, Tennessee Code Annotated section 50-6-204(a)(1)(A) requires an employer to provide injured workers "such medical and surgical treatment . . . as ordered by the attending physician . . . made reasonably necessary by accident as defined in this chapter."  Second, workers are required to "accept the medical benefits afforded under this section; provided that in any case when the employee has suffered an injury and expressed a need for medical care, the employer shall designate a group of three (3) or more independent reputable physicians, surgeons,

---

[1] *See, e.g.*, section 50-6-204(a)(3)(B) (if three specialists do not practice in the employee's community, the employer can include specialists within a radius of 125 miles); section 50-6-204(j)(2)(A) (the employer can include on a panel pain management physicians within a 175 mile radius of employee's residence or place of employment); and section 50-6-204(a)(6)(A) (providing for mileage reimbursement if the employee must drive more than thirty miles roundtrip for treatment).

[2] The dissent argues we have somehow adopted a "new legal term," direct referral, a phrase used by the trial court.  To be clear, we simply use that innocuous phrase to describe a situation where one physician refers a patient to another physician, an example of which is described in section 50-6-204(a)(3)(A)(ii).

chiropractors or specialty practice groups . . . from which the injured employee shall select one (1) to be the treating physician." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i).

In addition, there are statutory provisions regarding medical referrals. Pertinent to this case, section 50-6-204(a)(3)(A)(ii) states that, when appropriate, a "treating physician selected in accordance with this subdivision (a)(3)(A) shall make referrals to a specialist physician, surgeon, or chiropractor and immediately notify the employer." When such a referral is made, "[t]he employer shall be deemed to have accepted the referral, unless the employer, within three (3) business days, provides the employee a panel of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty practice groups." Tenn. Code Ann. § 50-6-204(a)(3)(A)(ii). In cases where the employer does provide a panel, "the employee may choose a specialist, physician, surgeon, chiropractor or specialty practice group to provide treatment only from the panel provided by the employer." *Id.*

The statutory scheme thus contemplates direct referrals to specialists and provides employers the option of accepting the referral or, instead, providing a panel of specialists. The statutes are silent as to whether an employee can demand a second panel after the employer accepts the referral from the first panel physician. The referral statute also does not impose specific criteria on the treating physician's selection of a specialist. Accordingly, we hold that Dr. Ballard's rationale for referring Employee to Dr. Hutcheson and Employer's acceptance of the referral do not violate section 50-6-204(a)(3)(A)(ii).

B.

The issue then becomes whether the trial court's ordering a panel of specialists, based on what it referred to as Employer's violation of the "spirit" of the referral statute, rather than the actual statutory language itself, was appropriate and within its authority. We hold it was not.

The trial court's decision hinges on its determination that an "an employer fails to comply with the spirit of the direct referral statute when it removes the treating physician's neutrality by compelling referral to a specific specialist." In so doing, the court reasoned Employer violated the referral law by usurping the employee's "privilege" of selecting his treating physician. Yet, our research reveals that in cases citing this "privilege" language, including the case relied upon by the trial court, *Ducros v. Metro Roofing and Metal Supply Co.*, *Inc.*, No. 2017-01-0228, 2017 TN Wrk. Comp. App. Bd. LEXIS 62 (Tenn. Workers' Comp. App. Bd. Oct. 17, 2017), the courts have affirmed an employee's right to select the *initial* treating physician from a panel. We have found no case in which this right has been extended to an employee's choice of a *referral* physician.

7

First, the Tennessee Supreme Court's consideration of the "privilege" language itself traces back to a case decided more than forty years ago, *Employers Insurance of Wausau v. Carter*, 522 S.W.2d 174 (Tenn. 1975). In *Wausau*, the injured worker was referred to the company doctor for treatment instead of being provided an initial panel of physicians. Unsatisfied with the company doctor's treatment, the employee sought treatment on her own and was later awarded medical and disability benefits. On appeal, the Supreme Court affirmed the trial court's decision, highlighting the employer's failure to provide an initial panel of physicians. The Court cited the initial panel provision in force at the time, Tennessee Code Annotated section 50-1004, which stated an employee shall accept the offered medical treatment "provided, that the employer shall designate a group of three (3) or more reputable physicians or surgeons . . . from which the injured employee shall have *the privilege* of selecting the operating surgeon or the attending physician." *Id.* at 176 (emphasis added). The Supreme Court went on to explain that

> [t]his statute authorizes the employer to choose a panel of three physicians, but the employee is given the *privilege* to make the final choice of the attending physician from the panel of three. . . . Referring the employee to a single physician does not comply with the statute; it is an usurpation of the *privilege* of the employee to choose the ultimate treating physician.

*Id.* (emphasis added). At no point did the Court in *Wausau*, or any court since, apply this privilege to the situation in which an initial panel physician made a referral to a specialist, the situation presented by the instant case. In fact, *Wausau* did not involve a referral at all, and the "privilege" language no longer appears in the statute. Thus, while Employee relies on *Wausau* in his brief, that case does not control the issue in the case before us. In the absence of any statutory language directing or permitting us to do so, we are unable to expand this "privilege" to enable an employee to essentially negate an employer's statutory right to accept a direct referral, a right expressly granted to it by the legislature.[3]

Second, our resolution of this issue is consistent with an important public policy underlying the workers' compensation system in general, namely, an employer's right to control medical treatment. While it is true that an employee may choose his or her initial treating physician, "Tennessee courts have long held that the employer in a workers' compensation case generally has the right to control medical treatment, assuming that the employer has complied with the requirements of Tennessee Code Annotated section 50-6-204." *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp.

---

[3] Parenthetically, we note that, prior to the 2013 reforms, the law contemplated situations in which a panel would not be required prior to an employer's providing medical care. Specifically, Tennessee Code Annotated section 50-6-204(d)(7) stated that, when the injury required "specialized medical attention" that was not available in the worker's community, "the injured employee can be required to go, at the request of and at the expense of the employer, to the nearest location at which the specialized medical attention is available." Tenn. Code Ann. § 50-6-204(d)(7)(2012). That language remains unaltered by the 2013 Reform Act.

8

App. Bd. LEXIS 24, at *7 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015); *see also Banks v. UPS, Inc.*, 170 S.W.3d 556, 562 (Tenn. 2005) (discussing the employer's "right to control the provision of treatment"); *Todd v. Blvd. Terrace Rehab. & Nursing Ctr., LLC*, No. M2003-01357-WC-R3-CV, 2004 Tenn. LEXIS 358, at *6 (Tenn. Workers' Comp. Panel Apr. 30, 2004) (a delay in reporting the injury prejudiced the employer's right to control the medical treatment). Here, Employer complied with the express requirements of the applicable statutes by providing an initial panel of physicians and by accepting that physician's direct referral. Accordingly, it has preserved its right to control medical treatment.

Third, Tennessee Code Annotated section 50-6-204(a)(3)(E) states that "[i]n all cases where the treating physician has referred the employee to a specialist . . . the specialist . . . to which the employee has been referred, *or* selected by the employee from a panel provided by the employer, shall become the treating physician." (Emphasis added.) If, as argued by Employee and our dissenting colleague, workers are always entitled to a panel upon a direct referral, the first clause of this statute – "to which the employee has been referred" – would be meaningless. Indeed, if this interpretation was correct and workers were always entitled to a panel of physicians, there would be no need for section 50-6-204(a)(3)(A)(ii) at all. The law is clear that statutes should be interpreted "so that no part will be inoperative, superfluous, void or insignificant." *Azbill v. Azbill*, 661 S.W.2d 682, 686 (Tenn. Ct. App. 1983). While our dissenting colleague would effectively revise the pertinent statutes by reading rights into them that are not there and, in the process nullify certain provisions, we have refrained from doing so.

Fourth, we are not unmindful of Employer's purported influence on Dr. Ballard's referral decision-making. However, directing employers' actions in a manner not currently mandated by statute is best left to the legislature, not the courts.[4] Similarly, Employee's argument that employers exercise too much control over medical treatment is a policy argument best addressed to the legislature, which has the authority to alter or remove the direct referral provisions of the law. We have no such authority.[5]

---

[4] We note that the designation "treating physician" as used in section 204(a)(3)(A)(i) is not a defined term, and the statutes treat authorized treating physicians differently in different contexts. For example, in section 50-6-102(14)(E), in order for the causation opinion of a "treating physician" to be entitled to a presumption of correctness, that physician must have been "selected by the employee from the employer's designated panel of physicians." Tenn. Code Ann. § 50-6-102(14)(E) (2018). Thus, an employer or its insurer takes a significant risk by instructing its panel physicians to make direct referrals to specific physicians since the causation opinion of such a referral physician is not entitled to a presumption of correctness.

[5] The policy arguments made by the dissent, while appropriate for the legislature to consider, do not enable us to read into the statutes a right or obligation not supported by a fair reading of the plain language of the statutes. Our role is to apply the statutes as written and go no further. *See Rush v. Great Am. Ins. Co.*, 376 S.W.2d 454, 458 (Tenn. 1964) ("The primary function of this Court is to interpret and apply the law to given situations. To legislate is wholly foreign to our duty.").

Finally, it is important to note that, unlike in times past when courts were called upon to interpret and apply the workers' compensation statutes remedially in favor of injured workers, our actions are now limited by Tennessee Code Annotated section 50-6-116. That statute mandates that the law "shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction[,] and this chapter shall not be construed in a manner favoring either the employee or the employer."[6] *See Willis v. All Staff*, No. M2016-01143-SC-R3-WC, 2017 Tenn. LEXIS 455, at *11 (Tenn. Workers' Comp. Panel Aug. 3, 2017). Awarding employees a panel of specialists where that right is not set out in the plain language of the statutes strikes of a remedial interpretation of the law in favor of one side, if not assuming a policy role best left to others, which our workers' compensation scheme now prohibits.

In short, after an initial panel of physicians is offered and an authorized physician is selected, that physician has the discretion to make a referral to a specialist. Tenn. Code Ann. § 50-6-204(a)(3)(A)(ii). If the employer does not want to accept that referral, it can offer the employee a panel of specialists. *Id.* However, there is nothing in the statutes that compels an employer to offer a panel of specialists any time there is a direct referral. Stated differently, there is no authority that enables an employee to negate an employer's statutory ability to accept a direct referral by insisting on a panel of specialists in every case. Unlike the dissent, we are persuaded that, if such a right should exist, it should be created by the legislature, not judges. Accordingly, we reverse the trial court's order to the extent it finds Employer must provide a panel of orthopedists, and instead conclude that Dr. Hutcheson is the treating physician.

---

[6] In *McClendon v. Food Lion, LLC*, No. E2013-00380-WC-R3-WC, 2014 Tenn. LEXIS 518 (Tenn. Workers' Comp. Panel July 11, 2014), the employee suffered a compensable injury to her shoulder and was provided an initial panel of physicians from which she chose an orthopedic surgeon. When that physician retired, she requested a new panel, from which she selected a neurosurgeon. Employee became unhappy with her new physician's treatment and requested a panel of orthopedic surgeons, asserting an orthopedic surgeon was more qualified to treat her shoulder injury. The trial court ordered a new panel of orthopedic surgeons. On appeal, the employer argued the trial court lacked authority to order another panel because Tennessee Code Annotated section 50-6-204 did not explicitly authorize a trial court to do so. The Supreme Court affirmed the trial court's order, holding "[w]hile courts may not amend, alter, or extend the provisions of the Act beyond its obvious meaning, it is well within the spirit of the workers' compensation law to ensure that an appropriate panel of physicians who are qualified to treat a particular injury is provided to an employee. . . . Since the workers' compensation statute should be liberally construed in favor of compensation and any doubts should be resolved in the employee's favor, we do not read section 50-6-204 or any other provision as precluding the trial court in this case from ordering Employer to provide a new panel of orthopaedic specialists." *Id.* at *13 (citations omitted). Importantly, *McClendon* arose prior to the effective date of the Reform Act of 2013, and the order for a new panel was expressly based on a remedial interpretation of pre-reform law.

*Noncompliance with Medical Treatment*

Employer next challenges its obligation to provide medical benefits in light of Employee's alleged medical noncompliance. Specifically, Employer argues that by failing to attend his scheduled appointment with Dr. Hutcheson, Employee refused the provided medical treatment and forfeited his entitlement to further benefits.

In Tennessee, when an employee "refuses to comply with any reasonable request for examination or to accept the medical or specialized medical services that the employer is required to furnish . . ., the injured employee's right to compensation shall be suspended and no compensation shall be due and payable while the injured employee continues to refuse." Tenn. Code Ann. § 50-6-204(d)(8). Our Supreme Court has long interpreted this provision to mean that "in circumstances where an employee is noncompliant with medical treatment, 'compensation shall be held in abeyance, not terminated.'" *Newell v. Metro Carpets, LLC*, No. 2015-05-0091, 2016 TN Wrk. Comp. App. Bd. LEXIS 57, at *4-5 (Tenn. Workers' Comp. App. Bd. Sept. 28, 2016) (citing *Blevins v. Pearson Hardwood Flooring Co.*, 144 S.W.2d 781, 783 (Tenn. 1940)).

As previously discussed, Employer provided the medical services it was required to furnish under the law by accepting Dr. Ballard's referral to Dr. Hutcheson and scheduling an appointment for Employee. Employee testified that his decision not to attend his appointment was based on his belief that it was too far from his home. As the trial court found, and as we have affirmed, Dr. Hutcheson was located in Employee's community. Thus, Employee's refusal to attend his May 10, 2018 appointment with Dr. Hutcheson based on location was unreasonable, and Employer appropriately suspended his right to compensation as provided in section 50-6-204(d)(8).

Because Employee refused treatment with Dr. Hutcheson on May 10, 2018, and has continued to refuse authorized treatment since that time, the trial court's award of benefits on and after May 10, 2018 was error. Accordingly, we reverse the trial court's decision to award temporary disability benefits between May 10, 2018 and June 1, 2018.

*Termination for Cause*

As its third basis of error, Employer argues Employee is not entitled to temporary disability benefits after April 22, 2018 because he was terminated for cause. Employer asserts that Employee did not show up or call in for his scheduled shifts after his injury and was thus fired for abandoning his job.

An injured worker is eligible for temporary disability benefits if (1) the worker became disabled from working due to a compensable injury, (2) there is a causal connection between the injury and the inability to work, and (3) the worker established the duration of the period of disability. *Albright v. Hercules HVAC Pads, Inc.*, No. 2018-

11

01-0109, 2018 TN Wrk. Comp. App. Bd. LEXIS 66, at *12 (Tenn. Workers' Comp. App. Bd. Dec. 20, 2018). A worker is entitled to temporary partial disability benefits, a category of vocational disability distinct from temporary total disability, when the temporary disability is not total. *See* Tenn. Code Ann. § 50-6-207(1)-(2). Specifically, while temporary total disability refers to the employee's condition while completely unable to work because of the injury until the worker recovers as far as the nature of the injury permits, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005).

Even though an employee has a work-related injury for which temporary benefits are payable, the employer is entitled to enforce workplace rules. *See Carter v. First Source Furniture Grp.*, 92 S.W.3d 367, 368 (Tenn. 2002). Thus, an employee's termination due to a violation of a workplace rule may relieve an employer of its obligation to pay temporary disability benefits if the termination was related to the workplace violation. *See Marvin Windows of Tenn., Inc. v. Gardner*, No. W2011-01479-WC-R3-WC, 2012 Tenn. LEXIS 403, at *9 (Tenn. Workers' Comp. Panel June 8, 2012). An employer will not be penalized for enforcing a rule or policy if the court determines "(1) that the actions allegedly precipitating the employee's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations; and (2) that those actions were, as a factual matter, the true motivation for the dismissal." *Durham v. Cracker Barrel Old Country Store, Inc.*, No. E2008-00708-WC-R3-WC, 2009 Tenn. LEXIS 3, at *9 (Tenn. Workers' Comp. Panel Jan. 5, 2009).

Here, while Employer asserts in its brief that Employee did not return to work despite Employer's ability to accommodate his restrictions and that Employee was terminated for abandoning his job on April 22, 2018, Employer has not provided any testimony or other evidence to support its allegation that Employee failed to return to work as scheduled.[7] By contrast, Employee testified that he returned to work for his next scheduled work day on April 22, 2018, and an Employer representative told him without explanation that he had been terminated. The trial court heard Employee's testimony and apparently believed him. In the absence of evidence contradicting Employee's testimony, we cannot conclude that the evidence preponderates against the trial court's conclusion, albeit implicit, that Employee was not terminated for cause. *See Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008) (When the trial court has seen and heard witnesses, considerable deference must be afforded the trial court's factual findings.). As a result, we affirm the trial court's order for temporary disability benefits from April 22, 2018, through May 9, 2018.

---

[7] An assertion of fact in a party's brief is not a substitute for evidence. *See Rezba v. Rezba*, No. M2014-00553-COA-R3-CV, 2015 Tenn. App. LEXIS 7, at *7 (Tenn. Ct. App. Jan. 7, 2015). Likewise, arguments of counsel are not evidence. *Bullard v. Facilities Performance Grp.*, No. 2017-08-1053, 2018 TN Wrk. Comp. App. Bd. LEXIS 37, at *12 (Tenn. Workers' Comp. App. Bd. Aug. 7, 2018).

**Conclusion**

For the foregoing reasons, we hold that the evidence preponderates in favor of the trial court's decision finding Dr. Hutcheson to be a physician located in Employee's community and awarding temporary disability benefits from April 22, 2018 to May 9, 2018. However, we hold that it was error for the trial court to order a panel of specialists and award temporary disability benefits on and after May 10, 2018. Finally, we find that this appeal is not frivolous and deny Employee's request for attorney's fees. Accordingly, the trial court's decision is affirmed in part and reversed in part, and the case is remanded. Each party shall bear their own costs on appeal.



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**
**(HEARD MAY 31, 2019, AT KNOXVILLE)**

| | | |
|---|---|---|
| Jason Rhodes | ) | Docket No. 2018-01-0349 |
| | ) | |
| v. | ) | State File No. 33747-2018 |
| | ) | |
| Amazon.com, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Thomas L. Wyatt, Judge | ) | |

DAVID F. HENSLEY, J., concurring in part and dissenting in part.

My colleagues misinterpret the statutes in issue, adopting a new legal term, "direct referral," heretofore foreign to Tennessee's workers' compensation law and altering the decades-old privilege of an injured employee to select the treating physician from an employer-provided panel. The majority applies subsection 50-6-204(a)(3)(A)(ii), enacted in part to shield employers from an employee directing an initial treating physician to refer him or her to a particular specialist, as a sword to nullify an employee's statutory right to select from a panel any treating physician other than the initial treating physician. The majority's interpretation runs counter to subsection 50-6-204(a)(3)(A)(i) and is inconsistent with section 50-6-116's mandate to construe the workers' compensation statutes fairly and impartially. For those reasons, I respectfully dissent from the majority's holding that only an initial panel need be provided by an employer.

Section 50-6-204(a)(3)(A) does not limit an injured employee's right to select the treating physician to the *initial* provider with whom the injured employee treats. Had that been the legislature's intention, it would have been a simple matter to state so. The majority's interpretation is inconsistent with the expressed right of an injured worker to select the treating physician from a panel as set out in subsection 50-6-204(a)(3)(A)(i), and it effectively eliminates an injured employee's statutory right to select the treating physician from a panel in any claim requiring treatment beyond what a primary care physician can provide. A brief overview of the history of an injured worker's right to select the treating physician is appropriate.

1

As originally enacted in 1919, the provision of the Tennessee Workers' Compensation Act obligating an employer to provide an injured worker "such medical and surgical treatment . . . as may be reasonably required" was interpreted as allowing the employer, in the first instance, to select the physician to provide the medical care that the injured worker was obligated to accept. *Irwin v. Fulton Sylphon Co.*, 166 S.W.2d 610, 611 (Tenn. 1942). Based on the statute's requirement that the employer furnish the medical care free of charge, the Tennessee Supreme Court concluded in 1942 that it "rather clearly appears to be the intent of the statute that the employer is to select a physician." *Id.* The rationale was that the employer "could not very well furnish a physician or provide a physician without first choosing the physician." *Id.*

In the year following the *Irwin* decision, a monumental change in the process of selecting the treating physician became law when the statute obligating an employer to provide medical care to an injured worker was amended to require the employer to "designate a group of three or more reputable physicians or surgeons if available in that community from which the injured employee shall have the *privilege* of selecting the operating surgeon or attending physician." 1943 Tenn. Pub. Acts, ch. 117, § 1 (emphasis added). This provision remained unchanged until 1967 when it was amended to require that the physicians or surgeons on the employer-provided panel not be "associated together in practice."[1] Almost twenty years later, the statute was further amended to provide that the "listing of physicians or surgeons may include doctors of chiropractic within the scope of their licenses."[2] Thereafter, the statute remained largely unchanged until the 2013 Reform Act, except for amendments in 2000 and 2001.

In 2000, the panel of physicians was expanded to four physicians, one of whom had to be a doctor of chiropractic, if the injury was a back injury.[3] In 2001 the statute was amended to add a new subsection providing that "[i]f the injury or illness requires treatment of a physician or surgeon who practices orthopedic or neuroscience medicine," the employer "may" appoint a panel of physicians or surgeons practicing orthopedic or neuroscience medicine "consisting of five (5) physicians, with no more than four (4) physicians affiliated in practice." 2001 Tenn. Pub. Acts, ch. 246, § 1. This amendment further provided that in circumstances where an injured employee is offered a "*treating panel*" consisting of five physicians as provided in the amendment, "the injured employee shall be entitled to have a second opinion on the issue of surgery, impairment, and a

---

[1] 1967 Tenn. Pub. Acts, ch. 113, § 3.

[2] 1984 Tenn. Pub. Acts, ch. 782, § 1.

[3] 2000 Tenn. Pub. Acts, ch. 990, § 1 added the requirement that the panel of physicians be expanded to four, one of whom must be a chiropractor, where the injury was a "back injury." The amendment additionally provided that "no more than twelve (12) visits to such doctor of chiropractic shall be approved per back injury."

diagnosis from that same panel of physicians selected by the employer." *Id.* (emphasis added).

Although other amendments prior to the 2013 Reform Act modified section 50-6-204 (and its predecessors) to extend the time period during which an employer was responsible for providing medical benefits or to increase the monetary limit of the medical expenses for which an employer might be liable, these amendments, with the exception of a 2008 amendment, did not impact physician panels. However, by replacing "operating surgeon *or* attending physician" with "operating surgeon *and* attending physician," a 2008 amendment made it clear that the injured employee's privilege of selection applied both to the operating surgeon *and* the attending physician.[4]

Thus, immediately prior to the effective date of the 2013 Reform Act, section 50-6-204(a)(4)(A) obligated an injured employee to accept the medical benefits afforded in that section, provided that, with the exceptions of an injury that "is a back injury" or an injury requiring "the treatment of a physician or surgeon who practices orthopedic or neuroscience medicine," the employer designated "a group of three (3) or more reputable physicians or surgeons not associated together in practice, if available in that community, from which the injured employee *shall have the privilege of selecting the operating surgeon and the attending physician*." Tenn. Code Ann. § 50-6-204(a)(4)(A) (2013) (emphasis added). If the injury was a back injury, the statute required the group of three or more physicians or surgeons to be "expanded to four (4), one (1) of whom must be a doctor of chiropractic." Tenn. Code Ann. § 50-6-204(a)(4)(B) (2013). In addition, if the injury required "treatment of a physician or surgeon who practices orthopedic or neuroscience medicine," the employer was authorized, but not required, to "appoint a panel of physicians or surgeons practicing orthopedic or neuroscience medicine . . . consisting of five (5) physicians, with no more than four (4) physicians affiliated in practice." Tenn. Code Ann. § 50-6-204(a)(4)(C) (2013).

Against this background, and as part of the substantial reforms enacted in 2013, many of the provisions of section 50-6-204 regarding medical treatment were modified. The obligation of an injured employee to "accept the medical benefits afforded under this section" continued where "the employee has suffered an injury and expressed a need for medical care." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (2018). In the event of an injury and the employee's expression of a need for medical care, the employer is obligated to "designate a group of three or more independent reputable physicians, surgeons, chiropractors or specialty practice groups . . . from which the injured employee shall select one (1) to be the treating physician." *Id.* Clearly, and consistent with the procedure originally enacted in 1943, the intention evident from the plain language of section 50-6-204(a)(3)(A)(i) of the 2013 Reform Act is that an injured employee have the right to select the "treating physician" from a panel. The obligation imposed upon

---

[4] 2008 Tenn. Pub. Acts, ch. 835, § 1.

employers by section 50-6-204(a)(3)(A)(i) was not limited to providing panels of primary care providers; rather, it extended to "surgeons . . . or specialty practice groups" from which the injured employee is required to select "one (1) to be the *treating* physician." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (emphasis added).

In the following subsection, subsection 50-6-204(a)(3)(A)(ii), the legislature addressed referrals. "When necessary, the treating physician . . . shall make referrals to a specialist physician, surgeon, or chiropractor and immediately notify the employer." Employers who responded timely to a treating physician's referral to a specialist were no longer at risk of an employee directing the specialist to whom he or she would be referred. Where a referral was made, "[t]he employer shall be deemed to have accepted the referral, unless the employer, within three (3) business days, provides the employee a panel of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty practice groups." *Id.* If the employer timely provides such a panel, "the employee may choose a specialist . . . only from the panel provided by the employer." *Id.*

Importantly, subsection 50-6-204(a)(3)(E) provides that "[i]n all cases where the treating physician has referred the employee to a specialist physician, surgeon, chiropractor or specialty practice group, the specialist physician, surgeon, or chiropractor to which the employee has been referred, or selected by the employee from a panel provided by the employer, *shall become the treating physician* until treatment by the specialty physician, surgeon, or chiropractor concludes and the employee has been referred back to the treating physician selected by the employee from the *initial* panel . . . ." Tenn. Code Ann. § 50-6-204(a)(3)(E) (emphasis added). By the plain language of this statute, when it is necessary for the treating physician to refer the injured employee to a specialist for treatment, the specialist "shall become the treating physician . . . ." *Id.* The statute contemplates that the "specialist" becomes the *treating* physician, yet the majority's conclusion is that unless the employer timely provides a panel of specialists, the employee's right to select the treating physician from a panel, which is expressly provided in section 50-6-204(a)(3)(A)(i), is lost due to the employer being "deemed to have accepted the referral."

The majority has taken the shield provided by subsection 50-6-204(a)(3)(A)(ii) that is intended to both (1) deter an employer from delaying an employee's treatment with a specialist and (2) protect an employer from an employee directing the initial treating provider to make a specific referral, to effectively allow an employer to designate the specialist physician by instructing the initial panel physician to make referrals to a particular specialist. The effect is to usurp the plain language of section 50-6-204(a)(3)(A)(i) in any case in which a referral to a specialist becomes necessary. How can it be said that these two subdivisions, the predecessor of which expressly granted an injured employee the privilege of selecting the operating surgeon and attending physician from a panel, express an intention to limit an injured employee's right to select the treating physician to the *initial provider* chosen from a panel? The term "privilege" is no

4

longer in the statute, and "the operating surgeon and the attending physician" have been replaced with "the treating physician." However, nothing in either subsection evidences an intention to limit an injured employee's right to select the treating physician to an *initial* panel or to remove the employee's right to select the treating physician from a panel in the event of a referral to a specialist. Irrespective of the absence of any expression of such intention, the majority has adopted a new legal term "direct referral" that materially alters the rights and obligations of employers and injured employees.[5] Any number of phrases could have been used to accomplish this end had the legislature intended the result reached by the majority to limit an injured employee's right to select a treating physician to the initial provider.

It would have been a simple matter for the legislature to have stated that both "the employer and the employee shall be deemed to have accepted the referral" had that been its intention. The legislature could have provided that the physician "to whom the injured employee is referred shall become the treating physician unless the employer, within three business days, provides the employee a panel," had the legislature's intention been to limit the employee's right of selection to an initial panel. Subsection 204(a)(3)(A)(ii) in no manner indicates that an injured employee loses the right to select the treating physician from a panel where the employer accepts or is "deemed" to have accepted the referral. Similarly, it would have been a simple matter to clarify that an employer's obligation to designate a panel was limited to the "initial" treating physician, had that been the legislature's intention. Instead, subsection 50-6-204(a)(3)(E) makes it clear that the specialist "shall become the treating physician until treatment by the specialist physician . . . concludes and the employee has been referred back to the treating physician selected by the employee from the *initial* panel . . . ." Tenn. Code Ann. § 50-6-204(a)(3)(E) (emphasis added).

Indeed, the language the majority construes to limit an injured employee's selection of the treating physician to an initial panel includes no words to that effect. The majority relies on an inference from the clause providing that the employer who does not timely provide a panel "shall be deemed to have accepted the referral." What does it mean for an employer to be deemed to have "accepted" a referral in the context of this subsection? Merriam-Webster defines "accepted" to mean "regarded favorably: given approval or acceptance."[6] In the context of these statutes, to be deemed to have "accepted" the referral clearly means to be deemed to have authorized the referral. Thus, the majority's inference is that the employer's acceptance, authorization, or approval of a treating physician's referral terminates the right of an injured employee to select the

---

[5] The Appeals Board first addressed the term "direct referral" in a 2017 interlocutory appeal, noting that the employer in the case "chose to describe subsection 204(a)(3)(A)(ii) as the 'direct referral statute,' although that phrase does not appear in the statute itself." *Tapley v. Transport Nat'l.*, No. 2016-05-1050, 2017 TN Wrk. Comp. App. Bd. LEXIS 64, at *7 n.2 (Tenn. Workers' Comp. App. Bd. Oct. 19, 2017).

[6] https://www.merrian-webster.com/dictionary/accepted (last visited June 10, 2019).

5

treating specialist from a panel *if the employer* fails to timely provide a panel of specialists. In my opinion, the majority's inference is tenuous at best.

If the inference is premised on pre-reform law expressed in the seventy-five years since injured workers gained the statutory right to select the treating physician from a panel, neither the appellant nor my colleagues has identified such authority. My research indicates that, under the workers' compensation law prior to the 2013 Reform Act, an employer's failure to give an injured employee the opportunity to choose the *ultimate* treating physician from a panel results in a risk of the employer having to pay the reasonable cost for treatment of the employee's injuries by a physician of the employee's choice. *See United States Fidelity & Guaranty Co. v. Morgan*, 795 S.W.2d 653 (Tenn. 1990) ("Where the employer fails to give the employee the opportunity to choose the *ultimate treating physician* from a panel of at least three physicians, [it] runs the risk of having to pay the reasonable cost for treatment of the employee's injuries by a physician of the employee's choice." (Emphasis added.)).

An injured worker's statutory right to select the ultimate treating physician from an employer-provided panel is an important and valuable benefit. In my opinion, neither the statutes in question nor prior judicial opinions express an intention to limit an injured employee's statutory right to select the treating physician from a panel to the initial medical provider. "Courts must adopt the most reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws." *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013) (internal quotes and citations omitted). Not only is it reasonable to adopt a construction of these statutes that avoids conflict between subsections 204(a)(3)(A)(i), (ii), and (a)(3)(E), but the construction I urge maintains an injured employee's decades-old statutory right to select the treating physician from a panel and provides for harmonious operation of these statutes.

Furthermore, the majority's interpretation clears the way for an employer or insurer to unilaterally select the treating physician in any claim where a referral to a specialist physician or surgeon becomes necessary. While this allows employers and insurers significantly greater control over the medical care, it effectively returns the medical provider selection process to the pre-1943 procedure in any case requiring treatment by a specialty physician. The facts in the instant case provide an example.

Here, Mr. Rhodes selected American Family Care, a walk-in medical clinic, from an employer-provided panel where he was seen by Dr. Natasha Ballard, a primary care physician. Dr. Ballard testified she referred Mr. Rhodes to Dr. Ricky Hutcheson. Asked specifically why she referred him to Dr. Hutcheson, she testified that since "they" had gotten the Amazon account "we were just told that, you know, for orthopedic we prefer Dr. Hutcheson." She testified "[i]t just depends on the employer. Even though we are a panel state, it depends on the employer and particularly their preference. Some employers or case managers prefer certain physicians over others." She testified that

"[t]ypically, we do that [make a referral to a specific physician] just to help speed up the process, so [employees] can get in to see someone sooner," but when asked, "[i]s there any medical reason why you made a specific referral to Dr. Hutcheson," she said, "[m]edically, no. . . . It was just – Amazon would just prefer to send [its employees] to Dr. Hutcheson." She was asked whether anyone told her "you have to provide referrals to Dr. Hutcheson," and she responded, "[t]hat was told to us by Michael Schock when we first started the account. . . . When we first got that, he had given us something that they wanted referrals to Dr. Hutcheson. So we've just kept that going ever since to him." Dr. Ballard further testified that if Mr. Rhodes was not employed by Amazon, she would not have referred him to Dr. Hutcheson.

The majority's interpretation of these statutes replaces the statutory right of an injured employee to select the ultimate treating physician from an employer-provided panel in favor of additional control by employers and insurers over the specific providers who serve as treating physicians. In my opinion, the majority's interpretation does not construe the statutes fairly and impartially as mandated by section 50-6-116; rather, the interpretation unfairly favors employers and insurers over injured workers. As in this case, initial panels that are provided to injured workers are frequently limited to walk-in or primary care medical clinics staffed by family nurse practitioners or primary care physicians. The effect of the majority's interpretation is to tacitly approve arrangements between employers and/or insurers with the medical providers included on initial panels, whereby referrals can be limited to specialists chosen by the employer and/or insurer, as occurred here. In my opinion, such arrangements effectively negate the express provision allowing an injured employee to select the treating physician from a panel as provided in section 50-6-204(a)(3)(A)(i).

In conclusion, I agree with the trial court's determination that Amazon essentially directed Mr. Rhodes to a single specialist, resulting in a usurpation of Mr. Rhodes' statutory right to select the treating physician from a panel. I would affirm the trial court's order that Amazon provide Mr. Rhodes a panel of orthopedists in his community for such treatment as is reasonably necessary for his alleged work injury, and I would affirm the trial court's award of temporary partial disability benefits. Because I disagree with the majority's conclusion that the referral to Dr. Hutcheson was appropriate, I do not address the issues of whether Dr. Hutcheson is within Mr. Rhodes' community or whether his refusal to attend an appointment with Dr. Hutcheson amounted to noncompliance with medical treatment. I concur in the majority's determination that this appeal is not frivolous.



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Jason Rhodes | ) | Docket No. 2018-01-0349 |
| | ) | |
| v. | ) | State File No. 33747-2018 |
| | ) | |
| Amazon.com, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Thomas L. Wyatt, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 11th day of June, 2019.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Sent to: |
|---|---|---|---|---|---|---|
| W. Troy Hart | | | | | X | wth@mijs.com |
| Tiffany B. Sherrill | | | | | X | tbsherrill@mijs.com |
| Tim O. Henshaw | | | | | X | tim@mcmahanlawfirm.com missy@mcmahanlawfirm.com |
| Thomas L. Wyatt, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | penny.patterson-shrum@tn.gov |

Matthew Keene
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: WCAppeals.Clerk@tn.gov